Filed 8/29/16  P. v. Perez CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>IRVINE PEREZ,<br><br>    Defendant and Appellant. | 2d Crim. No. B261263<br>(Super. Ct. No. LA075829-01)<br>(Los Angeles County) |

Irvine Perez appeals a judgment following conviction of felony indecent exposure, misdemeanor child molestation (three counts), misdemeanor sexual battery, and attempted misdemeanor sexual battery.  (Pen. Code, §§ 314, subd. 1, 647.6, subd. (a)(1), 243.4, subd. (e)(1), 664.)[1]  We affirm.

### FACTUAL AND PROCEDURAL HISTORY

Between the months of June and October 2013, Perez drove in a North Hollywood residential neighborhood and accosted minor girls who were walking alone.  Perez, a registered sex offender, lived nearby.  During one incident, he touched a girl's buttocks; in another, he exposed himself.  Los Angeles Police Detective Martin Pinner prepared and displayed photographic lineups to the victims.  At trial, the prosecutor presented evidence of sexual offenses committed by Perez against Leslie G., Andrea C.,

---

[1] All statutory references are to the Penal Code unless otherwise stated.

and Sandra H., among other girls. Perez denied committing the acts and presented a defense of mistaken identity.

*Leslie G. (Counts 5, 6.)*

At 7:30 a.m., on October 22, 2013, 14-year-old Leslie G. walked in a residential neighborhood in North Hollywood. Perez drove a sports utility vehicle across a driveway, blocking Leslie's path. Perez left the vehicle, stood before Leslie, and exposed himself. He took a few steps toward her and then returned to his vehicle. As Leslie walked away, Perez drove by. She saw his face through the open window of his vehicle.

Several days later, Leslie identified Perez in a photographic lineup, in part due to the appearance of his eyes and a facial mole. She later saw Perez's photograph in a media report. At trial, Leslie identified Perez as the man who accosted her.

Los Angeles Police Detective Ramon Garces conducted surveillance of Perez on October 22, 2013, the day that Leslie G. was accosted. At approximately 7:30 a.m., Perez left his residence in a gray sports utility vehicle and drove to a nearby residential neighborhood. As he drove, Perez looked at young females walking on the sidewalk. At one point, he drove across a sidewalk and blocked a female's passage. Garces saw Perez "manipulat[e]" the top of his pants or the bottom of his shirt and leave his vehicle. Perez returned to the vehicle and left the area.

*Erin B. (Count 7.)*

At 7:45 a.m., on June 22, 2013, Erin B. walked in a North Hollywood neighborhood. Perez approached her and squeezed her buttocks before he ran to a white sports utility vehicle. Erin memorized part of the vehicle's license plate number. She later identified Perez from a photographic lineup and again at trial.

*Andrea C. (Counts 8, 9.)*

At 6:20 a.m., on September 18, 2013, 17-year-old Andrea C. walked on Hatteras Street in North Hollywood. Perez drove a gray sports utility vehicle along parked vehicles and blocked Andrea's path. He extended his arm through the open

2

driver's window, squeezed Andrea's buttocks, and commented, "Nice." Andrea recorded the license plate number of the vehicle with her cellular telephone.

Later, Andrea examined a six-photograph lineup but did not select Perez's photograph. She also saw media coverage of the sexual assault, including a photograph of the sports utility vehicle, but not a photograph of Perez. Following the preliminary examination, Andrea discussed the incident with another victim. At trial, Andrea identified Perez in part due to his "face structure."

*Sandra H.*

*(Counts 11, 12.)*

At 7:20 a.m., on October 18, 2013, 17-year-old Sandra H. walked near Burbank Boulevard. Perez ran from an alley towards a nearby residence. He then looked at Sandra and ran towards her. She became frightened and ran to the other side of the street. Three times she crossed the street to avoid Perez's pursuit. Perez then ran to a gray sports utility vehicle that was parked in an alley with the driver's door open and the engine running. Sandra went to a nearby store for assistance. Perez drove by the store and stopped at a traffic signal. While awaiting the signal change, Perez looked at Sandra. She later identified his photograph from a photographic lineup.

A nightclub surveillance camera depicted Perez's vehicle parked in the alley that morning. The camera also depicted Perez leaving the vehicle and returning approximately 40 seconds later.

*Prior Crimes*

In the early morning of May 3, 2007, D.R. drove to her Burbank apartment. Perez followed her and climbed over the parking gate of her apartment building. When D.R. left her vehicle, Perez came behind her and touched her buttocks before running away. Perez's sports utility vehicle sustained body damage from ramming the apartment building's security gate.

3

On March 26, 2009, Perez was convicted of sexual battery by restraint, attempted sexual battery by restraint, sexual battery (four counts), and indecent exposure. (*People v. Perez* (Super. Ct. L.A. County, No. GA069606).)

*Defense Evidence*

Doctor Mitchell Eisen, a forensic psychologist, opined that eyewitness identification is unreliable because witness identification and memory may be influenced by many factors. In part, Eisen referred to exonerations of persons convicted by eyewitness identification.

Perez testified and denied committing the charged offenses. He stated that his wife was the primary driver of the sports utility vehicle and that his roommates, brother, and employees also drove the vehicle. Perez also stated that he has visible tattoos on his arms and shoulders. He explained his actions in the surveillance video as stopping in the alley to urinate.

*Contentions and Sentencing*

The jury convicted Perez of felony indecent exposure, misdemeanor child molestation (three counts), misdemeanor sexual battery, and attempted misdemeanor sexual battery. (§§ 314, subd. 1, 647.6, subd. (a)(1), 243.4, subd. (e)(1), 664.) It could not agree regarding count 7, sexual battery of Erin B.; that count was later dismissed. In a separate proceeding, the trial court found that Perez suffered a prior indecent exposure conviction.

The trial court sentenced Perez to a prison term of two years for felony indecent exposure plus six months to be served consecutively for misdemeanor sexual battery (count 9), and 12 months to be served consecutively for misdemeanor child molestation (count 12), for a total confinement of three years six months. Sentence regarding the remaining counts was imposed but stayed pursuant to section 654. The court also imposed a $300 restitution fine, a $300 parole revocation restitution fine (suspended), a $240 court security assessment, and a $180 criminal conviction

4

assessment and awarded Perez 50 days presentence custody credit.  (§§ 1202.4, subd. (b), 1202.45, 1465.8, subd. (a); Gov. Code, § 70373.)

Perez appeals and contends:  1) the trial court erred by excluding relevant evidence of Detective Pinner's alleged dishonesty in preparing and obtaining photographic lineup identifications; 2) the trial court erred by restricting his ability to raise a reasonable doubt regarding his guilt; and, 3) the trial judge was biased in favor of the prosecution.

## DISCUSSION

### I.

Perez argues that the trial court erred by excluding evidence that Detective Pinner employed "a ruse" involving a photographic lineup to obtain an incriminating statement from a suspect in an unrelated gang-homicide investigation.  He claims Pinner's ruse is "propensity evidence" within the meaning of Evidence Code section 1101 and constitutes a crime according to section 141, subdivision (b) [planting, altering, or concealing physical evidence by law enforcement].  Perez contends that the error denied him the due process right to a fair trial and to present a defense pursuant to the federal and California Constitutions.  He asserts that the error is prejudicial considered by any standard of review, pointing out that the victims did not mention his many visible tattoos nor did they see existing body damage on the sports utility vehicle.

The trial court possesses "'considerable discretion'" in determining the relevance of evidence.  (*People v. Jackson* (Aug. 1, 2016, S139103) – Cal.4th -, -.)  A court may exercise its discretion to exclude relevant evidence if its probative value is substantially outweighed by the probability that its admission will create a substantial danger of undue prejudice or jury confusion.  (Evid. Code, § 352; *Jackson*, at p. -.)  On review, the court's exercise of discretion in admitting or excluding evidence will be affirmed unless it exercised its discretion arbitrarily or unreasonably.  (*Ibid.*)

As a general rule, a defendant has no constitutional right to present all relevant evidence in his favor.  (*People v. Guillen* (2014) 227 Cal.App.4th 934, 1019.)

5

Application of the ordinary rules of evidence does not impermissibly infringe on the defendant's right to present a defense. (*People v. Lucas* (2014) 60 Cal.4th 153, 270, overruled on other grounds by *People v. Romero and Self* (2015) 62 Cal.4th 1, 53, fn. 19; *People v. Gonzales* (2012) 54 Cal.4th 1234, 1258.) Thus, constitutional principles are not offended by rulings that exclude evidence that is repetitive, marginally relevant, or that poses an undue risk of prejudice or confusion of the issues. (*Gonzales*, at p. 1259.) In order for a defendant's constitutional rights to override application of the ordinary rules of evidence, the proffered evidence must have more than slight relevance to the issues and must be of substantial and significant value. (*Guillen*, at p. 1019.)

Here Perez made an offer of proof that in a gang-homicide investigation, Pinner circled a suspect's photograph in a lineup and falsely informed him that a witness had identified him. Pinner executed this ruse to elicit incriminating statements from the suspect during his interrogation. Pinner's acts in the homicide investigation were consistent with the many judicial decisions holding that "police trickery" and subterfuge are not necessarily coercive in nature. (*People v. Mays* (2009) 174 Cal.App.4th 156, 164-165 [collecting decisions].) "A psychological ploy is prohibited only when, in light of all the circumstances, it is so coercive that it tends to result in a statement that is both involuntary and unreliable." (*Id.* at p. 164.)

Moreover, the trial court's decision to exclude this evidence was reasonable. Pinner's acts in the gang-homicide investigation did not involve witness identification of a suspect or a misrepresentation to the court. The ruse concerned an attempt to trick a suspect into making incriminating statements. By comparison, here Pinner removed a photograph from a lineup that made the lineup too suggestive and prepared a second lineup. (Only one man in the first lineup had a mustache.) Andrea C. did not identify Perez in the initial photographic lineup and she testified that she viewed only one lineup. Thus, evidence of the ruse in the homicide investigation was of slight relevance and involved a substantial danger that the jury would be misled or confused by issues of an unrelated gang-homicide prosecution.

6

Pinner's photographic lineups were presented at trial and Andrea and Pinner were cross-examined. Pinner explained why he created a second lineup. The trial court's ruling did not constitute a "'blanket exclusion'" of Perez's misidentification defense. (*People v. Page* (1991) 2 Cal.App.4th 161, 185.) Although the complete exclusion of a defense might rise to the level of a constitutional violation, excluding defense evidence on a minor point does not impair the due process right to present a defense. (*People v. Thornton* (2007) 41 Cal.4th 391, 443.)

*II.*

Perez contends that the trial court erred by improperly limiting his efforts to raise a reasonable doubt regarding guilt. Specifically, he asserts that the court restricted evidence that: 1) victims in *unrelated* criminal investigations may have tentatively identified him in error, and 2) other persons had access to his sports utility vehicle. Perez asserts that the error denied him the due process right to a fair trial and to present a defense pursuant to the federal and California Constitutions. He claims that the error is prejudicial considering any standard of review.

The trial court properly excluded evidence that victims of unrelated crimes not charged against Perez initially identified him based upon media reports. Police investigation established, however, that Perez did not commit these crimes which occurred in another area of Los Angeles County. The identifications were hearsay evidence, of slight relevance, and presented a danger of jury confusion. (*People v. Smith* (1989) 214 Cal.App.3d 904, 916 [exclusion of out-of-court statement identifying defendant as hearsay].) Application of the ordinary rules of evidence does not impermissibly infringe upon the defendant's right to present a defense. (*People v. Lucas*, *supra*, 60 Cal.4th 153, 270.) Moreover, Perez's expert witness testified regarding the inaccuracy and unreliability of eyewitness identification and Perez cross-examined the victims here concerning their identifications. Thus, his defense of misidentification was not unreasonably limited.

There is also no error because the trial court permitted Perez to present evidence that others had access to his sports utility vehicle at times. The trial judge ruled: "I'm absolutely allowing Mr. Perez, as well as any other witnesses who were percipient to it, to testify that other people used the car on the dates in question or even generally around that time period. I don't want there to be any confusion in the record or any thought of anyone reviewing this record that the capability to offer that aspect of his defense is being restricted, because it's not." The judge also stated that he did not "want to be foreclosing a defense." In accordance with this ruling, Perez testified that his brother, roommates, and employees had access to and drove the sports utility vehicle during the relevant times. Perez and his wife also testified that she was the primary driver of the vehicle.

*III.*

For the first time on appeal, Perez argues that the trial judge committed judicial misconduct by being biased in favor of the prosecution. He asserts that the probability of judicial bias denied him the due process right to a fair trial pursuant to the federal and California Constitutions, and that the error is reversible per se.

Perez may not assign any remark of the court as misconduct without an objection. (*People v. Wrigley* (1968) 69 Cal.2d 149, 164.) "Preliminarily, because defense counsel did not complain or otherwise object during trial that the evidentiary rulings . . . reflected judicial bias, defendant forfeited the claim on appeal." (*People v. Pearson* (2013) 56 Cal.4th 393, 447.)

In any event, Perez has not established actual or probable bias by the trial judge. In examining a claim of judicial misconduct, we must determine whether the trial judge's behavior was so prejudicial that it denied defendant a fair, as opposed to perfect, trial. (*People v. Seumanu* (2015) 61 Cal.4th 1293, 1321; *People v. Pearson*, *supra*, 56 Cal.4th 393, 447.) A trial judge's numerous rulings against a party, even if erroneous, do not establish a charge of judicial bias, particularly when the rulings are subject to review. (*Pearson*, at p. 447.)

8

As discussed herein, the trial court's evidentiary rulings regarding relevance and Evidence Code section 352 factors were reasonable and within the court's discretion. Matters regarding unrelated prosecutions were attenuated and presented serious issues of jury confusion and consumption of time. Moreover, the court eventually permitted Perez to present evidence that other persons had access to and at times drove his vehicle. Perez also presented expert witness evidence regarding the unreliable nature of eyewitness identifications. As well, he cross-examined Pinner and the minors concerning their photographic lineup identifications. Our review of the record does not reflect that Perez was deprived of a fair trial. (*People v. Pearson*, *supra*, 56 Cal.4th 393, 447; *People v. Freeman* (2010) 47 Cal.4th 993, 996 [only most "'extreme facts'" require judicial disqualification based on due process].)

The judgment is affirmed.

NOT TO BE PUBLISHED.

GILBERT, P. J.

We concur:

YEGAN, J.

PERREN, J.

9

Thomas Rubinson, Judge

Superior Court County of Los Angeles

_____

Deborah L. Hawkins, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, Robert C. Schneider, Deputy Attorney General, for Plaintiff and Respondent.